**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

KOPLIN B & W LLC              )
                                     )
    Plaintiff,                )
                                     )
v.                                )    CIVIL ACTION NO.:   3:23CV-17-CHB
                                     )
MIDDLETON REUTLINGER P.S.C.   )
                                   )
    Defendant.              )

**VERIFIED COMPLAINT**

Plaintiff Koplin B & W LLC states as follows for its Complaint against Middleton Reutlinger P.S.C. and alleges as follows:

**Parties**

1.      Plaintiff Koplin B & W LLC ("Koplin") is an Illinois limited liability company.

2.      The members of Koplin are Jorie, L.P., the Alfred N. Koplin Trust, dated November 14, 1969, and the Jean V. Koplin Trust, dated November 19, 1969.

3.      The trustee of the Alfred N. Koplin Trust, dated November 14, 1969, is a citizen of Nevada.

4.      The trustees of the Jean V. Koplin Trust, dated November 19, 1969, are citizens of Nevada and Illinois.

5.      The partners of Jorie, L.P. are the Carrie DYN Trust and ANJ Vegas, LLC.

6.      The trustees of the Carrie DYN Trust are citizens of Illinois.

7.      The members of ANJ Vegas, LLC are the Caroline Koplin Palmer Trust, Dated June 11, 1982, and the ANK 2012 Trust.

8.      The trustee of the ANK 2012 Trust is a citizen of Illinois.

9.     The trustee of the Caroline Koplin Palmer Trust, dated June 11, 1982, is a citizen of Illinois.

10.     Defendant Middleton Reutlinger P.S.C. ("Middleton") is a dissolved Kentucky professional service corporation.

11.     Middleton's principal place of business was Louisville, Kentucky and it was incorporated in Kentucky.  Therefore, Middleton is a citizen of Kentucky.

12.     At the time of dissolution, Middleton's officers and directors were Henry S. Alford, John F. Salazar and Dennis D. Murrell.

13.     At the time of dissolution, Middleton's shareholders were Henry S. Alford, Alexander P. Brackett, James E. Cole, Scot A. Duvall, Robert H. Eichenberger, Mark S. Fenzel, Elisabeth S. Gray, Kenneth S. Handmaker, Augustus S Herbert, Thomas W. Ice, David J Kellerman, Dennis D. Murrell, John F. Salazar, Robert J. Theuerkauf, John Casner Wheelcok, R. Gregg Hovious, Scott W. Higdon, Scott A. Stinebruner, Joseph R. Dages, Brantley C. Shumaker, Amy B. Berge, James Blaine Lewis, and Andrew D. Stosberg.

14.     All of Middleton's shareholders are citizens of either Kentucky or Indiana.

**Jurisdiction and Venue**

15.     Personal jurisdiction over Middleton is proper in this Court because its principal place of business was in Louisville, Kentucky and the entity was incorporated in Kentucky.

16.     Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Koplin and Middleton because the dispute arises between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

17.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because

2

the Defendant and its members reside in the Commonwealth of Kentucky and the events giving rise to this action occurred in Louisville, Kentucky.

**Middleton Abandons the Lease and Dissolves**

18.     Koplin owns a building located at 401 South Fourth Street in Louisville, Kentucky that is commonly known as the Brown & Williamson Tower.

19.     Middleton fully occupied the 24th, 25th, and 26th floors (the "Leased Premises") of the Brown & Williamson Tower.

20.     Koplin and Middleton are parties to a lease that was originally executed on January 19, 1996, and has been amended five times since executed. A true and accurate copy of the lease and its amendments are attached as **Exhibit 1** and will be collectively referred to herein as the "Lease."

21.     Middleton was an anchor tenant at the Brown & Williamson Tower.

22.     Koplin became the owner of the Brown & Williamson Tower in 2001 and, under the Second Amendment to the Lease, Koplin became the lessor under the Lease.  *Id.*

23.     Under the Fourth Amendment to the Lease, the term of the Lease was extended through August 31, 2029.  *Id.*  Consequently, Middleton is obligated to pay rent through August 31, 2029.

24.     The monthly rent is currently $96,950.64.  *Id.*  The monthly rent due changes over time based on the schedule set forth in the Fourth Amendment to the Lease.  *Id.*

25.     On September 16, 2022, Caroline Palmer, the Manager of Koplin, gave notice to Middleton through Henry Alford, its then managing partner, that the Brown & Williamson Tower was being marketed for sale.

26.     On October 24, 2022, Mr. Alford gave notice to Ms. Palmer that Middleton will be

dissolving based on differences within the firm about various issues.

27.     Mr. Alford did not give any notice that Middleton would breach the Lease or provide any basis for Koplin to believe that Middleton would not honor its obligations under the Lease.

28.     In late November 2022, Koplin received an offer to purchase the Brown & Williamson Tower from a third party (the "Purchaser").  The Purchaser's offer was based in part on having Middleton as the anchor tenant under a long-term lease.

29.     On December 8, 2022, the shareholders of Middleton voted to dissolve.  The articles of dissolution are attached as **Exhibit 2**.  The articles were filed with the Kentucky Secretary of State's office on January 3, 2023.

30.     On December 9, 2022, Ms. Palmer learned through a news article that Middleton had ceased operating as a law firm and ceased providing legal services at the Leased Premises.

31.     On December 12, 2022, Mr. Alford contacted Ms. Palmer and requested to have a phone call.

32.     On December 14, 2022, a Chicago-based attorney for Koplin spoke to Mr. Alford. During that call, Mr. Alford disclosed that Middleton was dissolving and that it would stop paying rent after February 2023.

33.     Additionally, Mr. Alford stated that Middleton would not be able to pay the full amount owed to Koplin under the Lease.

34.     Mr. Alford also stated that a new firm was being formed and that it would not continue operating in the Leased Premises.

35.     As a result of these statements by Mr. Alford, Koplin had an obligation of good faith to notify the Purchaser of the Brown & Williamson Tower of Middleton's abandonment of

the Leased Premises and did so on December 15, 2022.  As a result, the Purchaser ceased with its due diligence and then, on December 20, 2022, decreased its offer price substantially.

36.     By mid-December 2022, none of Middleton's attorneys were operating out of the Leased Premises.  All that was left at the Leased Premises was a limited number of staff who appeared to be focused on moving items out of the Leased Premises.

37.     Middleton tendered its rent payment for January 2023 on December 19, 2022.

38.     On December 22, 2022, Koplin gave notice to Middleton that Middleton was in default under Section 13(A)(ii) the Lease because Middleton had (i) indicated it was abandoning the Lease Premises, (ii) indicated it would not pay rent, and (iii) moved a substantial portion of its assets out of the Leased Premises (the "Default Letter").  A copy of the Default Letter is attached as **Exhibit 3**.

39.     The Default Letter requested adequate assurance payments from Middleton and a third-party neutral be immediately put in place to oversee the windup of the firm.  *Id.*

### A Receiver is Needed for Middleton

40.     On December 27, 2022, an attorney for Middleton responded to the Default Letter ("Middleton Response"). A copy is attached as **Exhibit 4**.

41.     According to the Middleton Response, Middleton was not dissolved and its operations were being managed by four Middleton shareholders and Middleton's CFO.  *Id.*

42.     On December 27, 2022, Koplin sent further correspondence to counsel for Middleton regarding the status of the firm and the effects of Middleton abandoning the Lease. A copy is attached as **Exhibit 5**.  This letter again requested security and adequate protection for Koplin and the appointment of a third party to windup the affairs of Middleton.  *Id.*

43.     Middleton has refused Koplin's requests for immediate adequate assurances and

5

has been unwilling to provide any financial information regarding Middleton's current cash, accounts receivable, amount of Middleton's secured debt, and/or total amount of creditors, despite repeated requests.

44.    Middleton is also unwilling to agree to appoint a third party to oversee the windup of Middleton.

45.    At the beginning of January, the website for Middleton, https://middletonlaw.com/, states as follows:

### Middleton Reutlinger dissolved on 12/31/2022.

If you need to contact an attorney previously employed at Middleton Reutlinger please reach out to Steve Bringard sbringard@middletonlaw.com

46.    On January 4, 2023, Koplin sent a Notice to Terminate Lease and a Notice of Demand to Vacate Leased Premises.  Copies of the notices are attached as **Exhibit 6** and **Exhibit 7**, respectively..

47.    On January 5, 2023, Koplin filed an eviction action.  A copy is attached as **Exhibit 8**.

48.    Middleton is no longer providing legal services to clients and therefore Middleton is no longer generating any future revenue.

49.     The shareholders of Middleton are still acting on behalf of the firm in its windup. Each shareholder of Middleton is an insider with a financial interest in Middleton.

50.     Koplin does not know whether Middleton has any money in any bank accounts.

51.     Koplin does not know the amount of Middleton's secured and unsecured debts.

52.     Koplin is aware that Middleton is continuing to pay some undisclosed bills and certain former employees in the windup process.

53.     Middleton will not disclose whether other creditors, like Koplin, will be paid in full.

54.     Presumably, the only additional assets of Middleton that could pay creditors are Middleton's accounts receivable ("A/R") and any potential work in process already performed but not yet billed before the firm's dissolution ("WIP").  The amount of this A/R and WIP is unknown and Middleton has been unwilling to disclose this amount.

55.     Once this limited pot of money is depleted, there will not be any other assets of Middleton available to satisfy its debts.

56.     A receiver for Middleton is necessary to insure that all revenue is collected and all creditors, including Koplin, are appropriately paid.

### Count 1: Breach of the Lease

57.     Koplin incorporates all of the above paragraphs as if fully rewritten herein.

58.     Koplin and Middleton are parties to the Lease.

59.     Under Section 13(A)(ii) of the Lease, "The following shall be deemed to be events of default…[Middleton] shall abandon any portion of the Leased Premises or shall move (or threaten to move) substantially all of its goods, chattels, or equipment out of the Leased Premises or shall cease to conduct its business from the Leased Premises…."

60.     Middleton is in default because it has ceased conducting its business as a law firm

from the Leased Premises.

61.     Middleton is in default because it has threatened to abandon the Leased Premises.

62.     Middleton is in default because it has moved a substantial portion of its assets from the Leased Premises.

63.     Middleton refused to provide adequate assurances of performance of the Lease obligations when requested.

64.     As a direct result of the defaults, Koplin will suffer millions of dollars of losses due to the significant decreased purchase price on the Brown & Williamson Tower by the Purchaser.

65.     Middleton's breach has caused Koplin to suffer significant damages including the loss of future rent payments.

66.     As a direct result of the defaults, Koplin has suffered damages in attorney's fees.

67.     Under Section 13(B)(iii) of the Lease, upon termination of the Lease due to the defaults, Middleton became liable for "all loss and damage which [Koplin] may suffer."

### Count 2: Appointment of Receiver

68.     Koplin incorporates all of the above paragraphs as if fully rewritten herein.

69.     Under Kentucky law, "[o]n the motion of any party to an action who shows that he has, or probably has, a right to, a lien upon, or an interest in, any property or fund, the right to which is involved in the action, and that the property or fund is in danger of being lost, removed or materially injured, the court may appoint a receiver, or order the master commissioner to take charge of the property or fund during the pendency of the action, and may order and coerce the delivery of it to him."  KRS § 425.600.

70.     Under Rule 66 of the Federal Rules of Civil Procedure, the Court has the power to appoint a receiver. Fed. R. Civ. P. 66.

71.     Middleton has ceased operations as a law firm and has legally dissolved.  Therefore, Middleton cannot generate any future revenue.

72.     Middleton's only sources of funds to pay creditors are its existing assets and potentially the outstanding A/R and WIP.

73.     This limited pot of funds are the only funds available to satisfy all of Middleton's debts, including its obligations under the Lease.

74.     Middleton is currently in the windup process of its assets and refuses to disclose the most basic information to Koplin.

75.     The appointment of a receiver is necessary to preserve the limited funds available to satisfy Middleton's debts and obligations and to ensure that all similarly situated creditors are treated equally.

### Count 3: Injunctive Relief

76.     Koplin incorporates all of the above paragraphs as if fully rewritten herein.

77.     Koplin seeks an injunction preventing Middleton from disbursing any funds until after a receiver can be appointed to oversee Middleton's windup process.

78.     Koplin is likely to succeed on its claims because Middleton has breached the Lease as detailed in Count 1.

79.     Middleton has a limited amount of funds to satisfy its debts and obligations to Koplin and any other creditors and therefore Koplin will suffer irreparable harm once those funds are exhausted.

80.     Middleton has dissolved and is in the process of winding up without the ability to pay its creditors in full.  An injunction preventing Middleton to disburse any funds until a receiver can be appointed will not harm anyone else and indeed will protect Middleton's creditors.

81.     Middleton is being managed by its former shareholders who are insiders.  It is in the public interest that Middleton be appropriately wound up and its creditors protected.

82.     Consequently, an injunction is appropriate to protect Koplin and its other creditors.

**WHEREFORE**, Koplin respectfully requests the following relief from this Court:

1.     A judgment in favor of Koplin on all claims asserted herein;

2.     A jury trial on all issues triable;

3.     Appointment of a receiver;

4.     Injunctive relief; and

5.     All further relief as the Court may deem just and equitable.

Respectfully submitted,

*/s/ V. Brandon McGrath*
V. Brandon McGrath (KBA # 89337)
DENTONS BINGHAM GREENEBAUM LLP
312 Walnut St., Suite 2450
Cincinnati, OH 45202
(513) 455-7641
Email: brandon.mcgrath@dentons.com

April A. Wimberg (KBA # 95741)
Gina M. Young (KBA #97211)
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, KY  40202
(502) 587-3715
Email: april.wimberg@dentons.com
          gina.young@dentons.com

*COUNSEL FOR PLAINTIFF*
*Koplin B & W LLC*

## VERIFICATION

I declare under penalty of perjury that the foregoing factual statements listed in this Verified Complaint are true and correct.

Executed on January 9, 2023.

Caroline Koplin Palmer
Manager, Koplin B & W LLC

11